Samantha G. CHANEY; et al., Plaintiffs–Appellants,

v.

Joseph D. LEHMAN, Defendant–Appellee.

No. 05–36116.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted Nov. 15, 2006.

Filed March 22, 2007.

Berzon, Circuit Judge, filed a dissenting opinion.

William O. Guffey, Esq., Spokane Valley, WA, for Plaintiffs–Appellants.

Douglas Wayne Carr, Esq., AGWA— Office of the Washington Attorney General (Olympia), Criminal Justice, Division Olympia, WA, for Defendant–Appellee.

Appeal from the United States District Court for the Western District of Washington, Franklin D. Burgess, District Judge, Presiding. D.C. No. CV–04–05881–FDB.

Before: ALARCÓN, RYMER, and BERZON, Circuit Judges.

## MEMORANDUM *

Samantha G. Chaney, Ryan L. Tatt, Brendalyn D. Marshall, and Joshua J. Bradford ("Class Plaintiffs"), a class of individuals who are, were, or will be incarcerated by the Washington State Department of Corrections ("DOC") beyond the first date they were or would be eligible for release into community custody, appeal from the district court's order dismissing with prejudice their 42 U.S.C. § 1983 action against Joseph D. Lehman, the former Secretary of the DOC, after concluding that the action was barred under qualified immunity. We affirm.

The Class Plaintiffs argue that release into community custody on the first eligible release time ("ERT") date is a liberty interest protected by the Fourteenth Amendment. Thus, they assert that Lehman violated their due process rights by not affording the Class Plaintiffs hearings after denying them release into community custody on their ERT dates. The Class Plaintiffs also argue that prisoners subject to post-release supervision have a constitutional liberty interest in amassing good time credits.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). State statutes or regulations, however, may independently create a due process liberty interest. *Kentucky Dep't of Corrections v. Thompson,*

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

490 U.S. 454, 461, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). "[L]aws that dictate particular decisions given particular facts can create liberty interests, but laws granting a significant degree of discretion cannot." *In re Cashaw,* 123 Wash.2d 138, 866 P.2d 8, 11 (1994).

The Class Plaintiffs have not established that they hold a liberty interest in their release into community custody upon their ERT dates. Under Washington law, inmates, like the Class Plaintiffs, "may" become eligible for supervised community custody in lieu of release. WASH. REV.CODE § 9.94A.728(2) (2006). The Washington statute grants a significant degree of discretion to the DOC regarding the release of such inmates. *Id.*

Before being transferred to community custody, an eligible inmate is required to "propose a release plan that includes an approved residence and living arrangement." WASH. REV.CODE § 9.94A.728(2)(c) (2006). The DOC has statutory authority to deny transfer to community custody status if it "determines an offender's release plan ... may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety." WASH. REV.CODE § 9.94A.728(2)(d). The statute further provides that "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement[.]" *Id.*

Washington appellate courts have indicated that, under Washington state law, early release into community custody is a "limited" liberty interest. However, even assuming, without deciding, that a "limited" liberty interest exists, no authority indicates that a hearing is required if such early release is denied. *See In re Taylor,* 122 Wash.App. 880, 95 P.3d 790, 792 (2004) (finding that an inmate has "a limited, but protected liberty interest" in good time credits); *In re Crowder,* 97 Wash.App. 598, 985 P.2d 944, 946 (1999) (holding that Crowder was not denied due process when the DOC did not release him into community custody on his ERT date because, after determining that placement with Crowder's proposed sponsor would have been a violation of his sentence, it provided him assistance in finding a suitable placement); *In re Dutcher,* 114 Wash.App. 755, 60 P.3d 635, 640 (2002) (finding that the DOC must allow an inmate to submit a community custody plan for investigation); *In re Liptrap,* 127 Wash.App. 463, 111 P.3d 1227, 1234 (2005) (finding that the DOC must consider release plans in a "timely manner").

DOC policy 350.200 describes specific procedures under which an inmate may submit a release plan, the plan may be investigated and subsequently approved or denied. If the plan is approved, the inmate may be transferred to community custody. If the plan is denied, an inmate may be advised of the DOC's decision regarding his or her release plan and may submit a new plan if he or she so chooses. This process and remedy was used by Class Plaintiff Michael Elder who, after receiving notice of the denial of his plan due to the DOC's inability to locate his proposed release address, submitted a corrected address that was ultimately approved. Accordingly, we conclude that the district court correctly determined that inmates have no clearly established right to a hearing prior to being denied release to community custody status in lieu of earned release time. Lehman is, therefore, entitled to qualified immunity.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:
I dissent.

For the most part, plaintiffs' counsel has failed to provide sufficient evidence to sustain a due process claim. The bulk of the declarations submitted as evidence fail to explain *why* the inmates were or are being kept in prison past their earned release date ("ERD"). These declarations do not indicate that the individuals in question ever submitted a release plan, much less one that met the *required criteria for release into community custody*. Class Plaintiff Michael Elder's declaration—one of only two in the record that describes the circumstances giving rise to the delayed release—indicates that his belated release was, at least in part, his own fault, as the majority describes. *Cf. In re Crowder*, 97 Wash.App. 598, 985 P.2d 944, 946 (1999) (finding no due process violation where the delay in releasing inmate into community custody was the result of "legitimate reasons," including inmate's withdrawal of a suggested release plan). Such vague declarations cannot carry the due process claim against a summary judgment by the defendant.

It is equally clear, however, that one named class plaintiff *has* provided sufficient evidence of a due process violation to survive summary judgment. Class Plaintiff Brendalyn Marshall provided evidence that she was held in prison past her ERD, which the Washington State Department of Corrections ("DOC") had confirmed in writing, despite the fact that the DOC had already approved the post-release residency arrangement she submitted. Despite this, the DOC told Marshall that, although she was past her release date, "the department required at least 60 days advance notice before releasing anybody, and that [Marshall] would have to wait in line behind the other inmates who were also past their release dates."

Washington has made clear that, if an inmate "has become eligible for transfer into community custody," administrative delay in acting on a release plan "deprive[s an inmate] of earned early release credits in violation of due process." *In re Personal Restraint of Liptrap*, 127 Wash.App. 463, 111 P.3d 1227, 1233–34 (2005). The prison policy directives support this conclusion. While the pertinent *regulations* and statutes afford the DOC significant discretion in the *substantive* aspects of the release plan approval process, that discretion does not extend to the *timing* of the process. Department of Corrections Policy 350.200 delineates specific timelines for the development and approval of community release plans by which DOC officials *"shall"* abide. *See* DOC Policy No. 350.200 (emphasis added). Nothing in the regulations or statutes authorized the sixty-day advance notice requirement imposed on Marshall, making it the type of arbitrary administrative delay *Liptrap* rejected. Accordingly, the class members who were similarly situated to Marshall do have a due process claim.

The discrepancy between the Elder and Marshall experiences underscores my real concern with this case: The class should never have been certified. Over 6,000 individuals have been lumped together into a single class. Some of those individuals appear to have a legitimate due process claim, but others do not. On the record before us, I have no way to discern who fits where. Of course, neither party has appealed the certification order—but then, neither party had any incentive to do so. Given the way this case has been litigated, binding all members of the class into a single Rule 23 action raises significant due process concerns. *See Hansberry v. Lee*, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (recognizing that a class action that fails to "fairly insure[ ] the protection of the interests of absent parties who are to be bound by it" results in a "failure of due process"); *Kourtis v. Cameron*, 419 F.3d 989, 996 (9th Cir.2005) (noting that "the Supreme Court has repeatedly emphasized

that it would violate the Due Process Clause ... to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented." (alteration in original) (internal quotation marks omitted)); *see also L. v. Matheson,* 450 U.S. 398, 433 n. 9, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (Marshall, J., dissenting) ("Where review of the claims asserted is impaired by an obvious lack of homogenity [sic] in the class approved by the trial court, the reviewing court must remand for reconsideration of the class definition, and for a determination whether the named plaintiff is a proper representative of the class." (citations and internal quotation marks omitted)). I would therefore reverse the district court and permit Marshall to proceed to trial on her due process claim. In addition, I would remand and order that the class certification be vacated.