REINHARDT, Circuit Judge:
This case presents the question whether Washington state law creates a liberty interest in an inmate’s early release into community custody that is protected under the Due Process Clause of the Fourteenth Amendment. We hold that it does. We conclude, however, that this right was not clearly established at the time of the facts giving rise to this case. We therefore affirm the district court’s grant of qualified immunity.
I. Factual and Procedural Background
In August 1999, Joseph Dale Carver pled guilty to child molestation in the third degree. He was sentenced to fifty-four months of confinement in the custody of the Washington State Department of Corrections (“DOC” or “Department”). Because he was a sex offender, state law also required that Carver be sentenced to a term of community custody to begin “either upon completion of the term of confinement or at such time as [he] is transferred to community custody in lieu of earned release!.]” See Wash. Rev. Code § 9.94A.710(1) (2006).[1] He was sentenced to a thirty-six-month period of community custody.
Carver’s good behavior as a prisoner earned him an early release date of June 27, 2002.[2] Carver’s sex offense, however, *662 precluded him from being released on his earned date. Wash. Rev. Code § 9.94A.728(2)(a) (2006). Rather, state law provides that sex offenders may become eligible for transfer to community custody in lieu of early release. Id. Eligibility for transfer to community custody is determined based on “release plan[s]” submitted by offenders. Wash. Rev. Code § 9.94A.728(2)(c). In March 2002, Carver submitted a release plan. His plan was denied in April 2002, pursuant to a DOC policy then in effect which provided for the categorical denial of release plans of offenders, like Carver, whom the Department determined “appear[ed] to meet the definition of a sexually violent predator and [who had] been referred for Civil Commitment....” DOC Policy Directive 350.200 (May 4, 2001).[3] As a result of the denial of his proposed release plan, Carver served his full term of confinement.
In September 2004, Carver filed a civil rights suit under 42 U.S.C. § 1983, asserting that DOC officials denied him early release into community custody without affording him due process of law under the Fourteenth Amendment.[4] The district court, adopting the report and recommendation of the magistrate judge, granted the DOC officials’ motion for summary judgment on two principal grounds: one, that Washington law does not create a liberty interest in early release into community custody and therefore Carver did not have a due process right protected by the Fourteenth Amendment and two, that even if such a right existed, Defendant Lehman was entitled to qualified immunity.[5] Carver timely appealed. We have jurisdiction to review the district court’s determination pursuant to 28 U.S.C. § 1291, and we review de novo its grant of summary judgment and finding of qualified immunity. See Mabe v. San Bernardino County, Dep’t of Pub. Soc. Sens., 237 F.3d 1101, 1106 (9th Cir.2001); Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir.2007).
II. Discussion
The Due Process Clause of the Fourteenth Amendment provides that no state shall “deprive any person of life, liberty, or property, without due process of law....” U.S. Const, amend. XIV, § 1. Our analysis of due process claims proceeds in two steps. “[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.” Ky. Dep’t of Corr. v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citation omitted).
We have recognized that “[a] liberty interest may arise from either of two sources: the due process clause itself or state law.” Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986). Carver *663 concedes that the Due Process Clause does not create a liberty interest in an inmate’s “conditional ] release[ ] before the expiration of a valid sentence.” Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Rather, he argues that Washington state’s statutory scheme governing early release into community custody “uses mandatory language, ‘creat[ing] a presumption that ... release will be granted’ ... unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest.” McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir.2002) (quoting Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100; citing Bd. of Pardons v. Allen, 482 U.S. 369, 377-78, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987)). As in prior cases, our task here is to apply the well-established mandatory language rule governing state-created liberty interests set forth by the Supreme Court in Greenholtz and Allen to the Washington statutory scheme at issue.[6] See, e.g., Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir.2006) (holding California law creates a liberty interest in parole); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir.2003) (same); McQuillion, 306 F.3d at 901-902 (same); Bermudez v. Duenas, 936 F.2d 1064, 1065-66 (9th Cir.1991) (holding Guam law creates a liberty interest in parole); Baumann v. Ariz. Dep’t of Corr., 754 F.2d 841, 843-45 (9th Cir.1985) (holding Arizona law does not create a liberty interest in custodial release); Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 469-70 (9th Cir.1989) (holding Idaho law does not create a liberty interest in parole). We turn to that task now.
A. The Washington statutory scheme governing early release into community custody creates a constitutionally protected liberty interest.
Washington law mandates that an individual convicted of a sex offense be sentenced to a term of community custody that “shall begin either upon completion of the term of confinement or at such time as the offender is transferred to community custody in lieu of earned release.” Wash. Rev. Code § 9.94A.710(1). Unlike other inmates, then, a convicted sex offender who accrues “earned release time ... for good behavior and good performance” is not entitled to early release; rather, he is eligible for transfer into community custody at an earlier date. Wash. Rev. Code § 9.94A.728(1), (2)(a). The law requires *664 the DOC to develop a program to effectuate the transfer to community custody of such inmates. See Wash. Rev. Code § 9.94A.728(1). As part of that program, the Department must “require the offender to propose a release plan that includes an approved residence and living arrangement.” Wash. Rev. Code § 9.94A.728(2)(c). The law then describes how the DOC should evaluate such release plans, stating:
The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender’s release plan, including proposed residence location and living arrangements, [1] may violate the conditions of the sentence or conditions of supervision, [2] place the offender at risk to violate the conditions of the sentence,[3] place the offender at risk to reoffend, or [4] present a risk to victim safety or community safety.
Wash. Rev. Code § 9.94A.728(2)(d) (emphasis added).[7]
In order to comply with the statutory mandate, the DOC promulgated Policy Directive 350.200. Under the version of this policy in force when Carver submitted his release plan, the DOC instructed that release plans of sex offenders be assessed to determine “the degree of risk for victims and potential victims of similar age or circumstances” and to ensure that, subject to certain exceptions, “[s]ex offenders will not return to a residence where minor victim(s) or other children of similar age are present in the residence[.]” DOC Policy Directive 350.200 (May 4, 2001). The Policy Directive specified that a residence proposed by an offender within a release plan may be denied if the proposed location will place the offender in violation of court-imposed conditions, at the likely risk to re-offend, or in close proximity to the minor victim(s), school, child care center, playground, or other facilities where children of similar age and circumstances surrounding the conviction are present and who may be put at substantial risk of harm by thé offender residing at that location.[8] The DOC’s policy also provided for the categorical denial of release plans “if the End of Sentence Review Committee has determined that the offender appears to meet the definition of a sexually violent predator and s/he has been referred for *665 Civil Commitment....”[9] This final provision, under which Carver’s release plan was denied, was subsequently eliminated after the Washington Court of Appeals held that it violated the statutory requirement that all sex offenders “may become eligible” for community custody. See In re Dutcher, 60 P.3d at 638-40. See also Letter from Anne L. Fiala, Assistant Deputy Secretary, Washington State Dep’t of Corrections, to Office of Correctional Operations Management (Jan. 12, 2003).[10]
Carver argues that this statutory scheme creates a protected liberty interest because it requires the DOC to transfer an inmate to community custody in lieu of earned release “unless any one of the ... specifically designated reasons are found[,]” thereby “creat[ing] a presumption that ... release [into community custody] will be granted, and that this in turn creates a legitimate expectation of release absent the requisite finding that one of the justifications for [denial] exists.” Green-holtz, 442 U.S. at 11-12, 99 S.Ct. 2100. See also Allen, 482 U.S. at 377-78, 107 S.Ct. 2415. We agree.
The Washington statutory scheme uses language that effectively mandates the transfer to community custody of those inmates who have earned release time and who have not been found to meet one of the statutory reasons for denial of a release plan set forth in § 9.94A.728(2)(d). Section 9.94A.710(1) requires that sex offenders be sentenced to a term of community custody to begin either when the offender’s term of confinement is complete or when he is transferred as a result of earned release time. Section 9.94A.728(1) likewise requires the DOC to develop and promulgate procedures by which a sex offender may become eligible for transfer to community custody in lieu of earned release time. The same section then sets forth the limited circumstances under which the Department “may deny” an inmate’s proposed plan for transfer to community custody. Wash. Rev. Code § 9.94A.728(2)(d) (listing as legitimate reasons for denial, a DOC determination that the release plan, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim or community safety). By placing substantive limitations on DOC’s discretion to deny release plans and, in particular, by requiring that denial of such plans be based on the limited criteria contained in section 9.94A.728(2)(d), Washington has created a liberty interest in early release into community custody that is protected by the Due Process Clause of *666 the Fourteenth Amendment.[11] See Allen, 482 U.S. at 375-76, 107 S.Ct. 2415 (clarifying that a state may grant “significant discretion to the decisionmaker” to apply “general or broad release criteria” without “depriving] the prisoner of the liberty interest in parole[,]” so long as “release is required after the[decisionmaker] determines (in its broad discretion) that the necessary prerequisites exist”). See also Baumann, 754 F.2d at 844 (noting that “[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion”); Bergen v. Spaulding, 881 F.2d 719, 721 (9th Cir.1989) (“A board charged with deciding a prisoner’s early release may be delegated significant discretion in making its decision, and yet be constrained by legal standards in exercising that discretion____that scheme may give rise to a liberty interest in early release.”) (internal citation omitted).
That the Washington statute governing transfer to community custody does not use the more traditional mandatory language formula used in other early release statutes, i.e. stating that the DOC “shall” grant release “unless” certain findings are made, does not require a contrary result. See Allen, 482 U.S. at 378, 107 S.Ct. 2415 (rejecting the argument that a statute must contain the “shall/unless” formula in order to create a liberty interest). Although we have accorded significance to the use of the term “shall” in assessing whether early release statutes create a liberty interest, we have never held that use of this term is required in order to satisfy the mandatory language rule set forth in Greenkoltz and Allen. Nor do we here. Despite the absence of the word “shall,” we conclude that the language of section 9.94A.728(2)(d) is mandatory. Section 9.94A.728(2)(d) provides that the department “may deny transfer to community custody ... if” any one of four criteria is met. By establishing criteria under which release may be denied, section 9.94A.728(2)(d) creates the presumption that, absent the existence of one those *667 criteria, release will be granted. The repetition of the criteria, albeit in more specific form, in section 72.09.340(3)(a) and in Policy Directive 350.200 confirms our understanding of the mandatory nature of the statute.
The “may deny ... if’ formula operates in precisely the same manner ■ and has precisely the same effect as a “shall grant ... unless” clause. Under the “may deny ... if’ formula, the provision sets forth the conditions under which the agency may deny release. Otherwise, it must grant it. This is distinguishable from state statutes that provide that a decisionmaker “may grant ... if ’ certain criteria are met. Un-. der the “may grant ... if’ formula, the agency may only grant release if the relevant criteria are met, but it is not required to do. so.[12] Therefore, under the “may deny ... if’ formula, as under a “shall grant ... unless” clause, there is an expee-tation that release will be granted unless one of the specified conditions exists.
Our conclusion is supported by Washington state court decisions finding a limited liberty interest in transfer to community custody in lieu of early release, as well as interpreting the statutory provisions governing such transfers. The Washington Court of Appeals has consistently found a “limited liberty interest in early release into a community cústody program----” 'In re Crowder, 985 P.2d at 944-45 (holding inmate had liberty interest in grant or denial of community custody placement upon earning of early release, but that the minimum level of due process required to protect this interest was provided). See also In re Dutcher, 60 P.3d at 636 (“An inmate’s interest in his earned early release credits is á limited, but protected, liberty interest.”); In re Liptrap, 127 Wash.App. 463, 111 P.3d 1227, 1231 (2005) (same).[13]
*668 Moreover, in interpreting the statutory scheme governing early release into community custody, the state Court of Appeals has on two occasions discussed the mandatory nature of the law. In Dutcher, an inmate similarly situated to Carver challenged the DOC’s failure to review his plan for release into community custody pursuant to the Department’s policy of categorically denying the plans of those offenders who appeared to be sexually violent predators and who were referred for civil commitment. 60 P.3d at 635-36. The court held that the DOC’s policy violated the statutory mandate, explaining that “the statute compels DOC to require offenders to develop a release plan, and requires DOC to base its community custody eligibility decisions on the merits of the release plan.” 60 P.3d at 638 (emphasis added).
Our conclusion that requiring a decision on the merits of a release plan permits the Department to deny such a plan only if it finds one of the statutory criteria listed in section 9.94A.728(2)(d) is bolstered by the state court’s interpretation of the statute in In re Liptrap. In Liptrap, inmates challenged the DOC’s policy of refusing to review release plans of sex offenders until a forensic psychological evaluation had been completed. Id. at 1229. In finding that the Department’s policy violated inmates’ due process rights, the court explained that “[t]he provisions in subsections [9.94A.728(2) ] (c) and (d), spell[ ] out what is required in a release plan and stat[ej reasons why the department may deny a release [.]” Id. at 1232 (emphasis added). Accordingly, the Liptrap court found that “the department [does not have] unlimited discretion to decide whether and when to consider an offender for transfer to community custody.” Id. Rather, the DOC’s failure to “state[ ] a legitimate reason” for the denial of a release plan, the court concluded, “deprived [the inmates] of earned early release credits in violation of due process.” Id. at 1234 (emphasis added).[14] This holding is consistent with our conclusion that Washington law requires that the DOC’s denial of a release plan be based on a “legitimate reason,” and that such reasons are enumerated in section 9.94A.728(2)(d).
In sum, we hold that the Washington statutory scheme governing transfer to community custody of those inmates who have earned early release time creates a liberty interest that is protected under the Due Process Clause of the Fourteenth Amendment.[15] Our next step is to deter *669 mine “whether the procedures attendant upon th[e] deprivation [of Carver’s liberty interest] were constitutionally sufficientf.]” Thompson, 490 U.S. at 460, 109 S.Ct. 1904. Carver’s release plan was denied under a categorical policy that provided him with no process at all; it simply rejected all plans of offenders who, like Carver, appeared to fall under the definition of a sexually violent predator and who were referred for civil commitment. Accordingly, we conclude that the complete absence of procedures deprived Carver of his liberty interest in transfer to community custody without due process of law.
B. Qualified Immunity
Qualified immunity protects “government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Our qualified immunity analysis proceeds in two parts. First, we consider whether “the facts alleged show that [Lehman’s] conduct violated a constitutional right[.]” Galen, 477 F.3d at 658-59 (citing Saucier v. Katz, 533 U.S. 194, 200-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). For the reasons discussed above, we answer this question in the affirmative. Second, we ask if “the right [Lehman is] alleged to have violated [was] clearly established such that a reasonable [official] would have understood that he was violating that right[.]” Id. We conclude that the answer to this question is no.
*670 In determining whether the right alleged to have been violated was clearly-established, we must consider the right “in light of the specific context of the case, not as a broad general proposition!.]” Saucier, 533 U.S. at 201, 121 S.Ct. 2151. “ ‘The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.’ ” Saucier, 533 U.S. at 202, 121 S.Ct. 2151 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Here, because section 9.94A.728(2)(d) does not use the more common mandatory term “shall,” a reasonable correctional official might not have understood that the Washington statutory scheme created a liberty interest in early release into community custody. Certainly, the question was highly debatable at the time that Lehman was required to act. Carver’s plan was denied before the Washington Court of Appeals had issued its decisions in Butcher and Liptrap, which clarified that not only does a limited liberty interest exist under state law, but that the DOC’s discretion to deny release into community custody is limited to rejection of a plan on the basis of the legitimate statutory criteria set forth in section 9.94A.728(2)(d).
Because we conclude that the right at issue here was not sufficiently clear at the time of the facts giving rise to this case such that a reasonable official would understand that denying a release plan without providing a legitimate statutory reason for that denial would violate due process, we affirm the district court’s grant of qualified immunity.
III. Conclusion
Washington state law creates a liberty interest in an inmate’s early release into community custody that is protected under the Due Process Clause of the Fourteenth Amendment. Carver was denied his due process right by the state officials’ refusal to approve his release plan without reviewing it on its merits. At the time, however, the due process right arising from the existence of his liberty interest was not sufficiently clearly established to meet the Saucier standard. We therefore affirm the district court’s determination that Lehman is entitled to qualified immunity.
AFFIRMED.

. The Washington Court of Appeals has explained that “[c]ommunity custody is the intense monitoring of an offender in the community for a period of at least one year after release or transfer from confinement. Although it has other purposes, community custody continues in the nature of punishment, and is not equivalent to general release.” In re Crowder, 97 Wash.App. 598, 985 P.2d 944, 945 (1999). Offenders in community custody live in a residence pre-approved by the DOC and are subject to mandatory and discretionary conditions imposed by either the DOC or the sentencing court. See, e.g., Wash. Rev. Code §§ 9.94A.710(2)-(3), 9.94A.700(4)-(5) (listing mandatory and discretionary conditions imposed on offenders subject to community custody including, inter alia, reporting requirements, payment of supervision fees, and prohibitions against possession of controlled substances and consumption of alcohol).

. For reasons that are not explained in the record before us, this date was subsequently pushed back to January 13, 2003.

. As we explain infra, this policy was subsequently struck down by the Washington Court of Appeals in In re Dutcher, 114 Wash.App. 755, 60 P.3d 635, 640 (2002) (holding "DOC Policy 350.200 ... violates the governing statutes”).

. Carver's original complaint named as a defendant only Joseph Lehman, secretary of the DOC at the time that Carver’s release plan was denied. In his amended complaint, Carver named two additional defendants, Kimberly Acker and Victoria Roberts, both DOC officials involved in making end of sentence review determinations.

.The district court also adopted the magistrate judge’s finding that Defendants Acker and Roberts were entitled to summary judgment because Carver failed to show that "these defendants played any part in enacting the policy that precluded [Carver] from being considered for release.” Carver does not appeal this portion of the judgment below.

. In his reply brief, Lehman argued that Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) should control our liberty interest inquiry. In Sandin, the Supreme Court considered a challenge to a prison regulation imposing disciplinary segregation for misconduct. Id. at 475-77, 115 S.Ct. 2293. In holding that the regulation did not create a liberty interest, the Court did not apply the “mandatory language” framework of Greenholtz and Allen. Id. at 481-86, 115 S.Ct. 2293. Instead, it focused on whether the challenged restraint arising from the regulation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.” Id. See also Wilkinson v. Austin, 545 U.S. 209, 222-224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (applying Sandin to determine whether Ohio inmates have a liberty interest in avoiding placement in a "supermax” prison). As Lehman properly conceded in his supplemental submissions to the court, we have since held that Sandin's holding was limited to "the separate but related question of when due process liberty interests are created by internal prison regulations.” McQuillion, 306 F.3d at 902-03 (emphasis added). See also Sass, 461 F.3d at 1127 n. 3 (explaining that this court has "consistently rejected th[e] argument” that Sandin eliminated the " ‘mandatory language' approach of Greenholtz and Allen "). Accordingly, we continue to apply the "mandatory language” rule set forth in Greenholtz and Allen in order to determine whether Washington's statutory scheme creates a liberty interest in early release into community custody.

. The provision goes on to state that "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement.” Wash. Rev. Code § 9.94A.728(2)(d). The concurrence argues that this sentence makes it clear that the function of section 9.94A.728(2)(d) is "to preserve to the DOC the discretion to deny transfer in the event that it makes one of the four determinations, notwithstanding what other legal sources might otherwise require.” Cone. Op. at 672. We do not disagree. The fact that the provision permits the DOC to deny release even where other legal sources would allow for it is irrelevant, however, to the question at hand: whether, regardless of other legal sources, the statute itself places substantive limits on the DOC's exercise of discretion? As we explain infra, the provision’s preservation to the DOC of discretion to deny transfer only "in the event that it makes one of the four determinations!,]” is precisely the type of substantive limitation that gives rise to the liberty interest that we now recognize.

. The final of these criteria is drawn from section 72.09.340(3)(a) of Washington's Revised Code which provides that the DOC is "authorized to reject a residence location if the proposed residence is within close proximity to schools, child care centers, playgrounds, or other grounds or facilities where children of similar age or circumstance as a previous victim are present who the department determines may be put at substantial risk of harm by the sex offender's residence at that location.” Wash. Rev. Code § 72.09.340(3)(a) (2006).

. Washington state law defines "sexually violent predator” as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." Wash. Rev. Code § 71.09.020(16) (2006). An offender determined to be a sexually violent predator may be subject to civil commitment after his term of confinement. Wash. Rev. Code § 71.09.040 (2006).

. The DOC amended Policy Directive 350.200 in June 2002. In its amended form, the policy provides for the denial of release plans "[wjhen the offender’s plan is to return to a residence where there is a victim(s) that the [department] believes is at risk[,]” and for the rejection of proposed residences under the same criteria as set forth in its prior directive. See DOC Policy Directive 350.200 (June 25, 2002). The amended policy also initially retained the provision requiring the categorical denial of the release plans of those who appear to meet the sexually violent predator definition and have been referred for civil commitment. Id. As we explain supra, the categorical denial provision was eliminated after the Washington Court of Appeals' decision in In re Dutcher, 60 P.3d at 640.

. At oral argument, Lehman argued that the presence of more specific criteria for denial of proposed residence locations in section 72.09.340(3)(a) undermines Carver’s contention that the four criteria listed in section 9.94A.728(2)(d) provide the exclusive legitimate bases for denial of a release plan. Lehman is incorrect: the bases for denial of proposed i residence locations contained in section 72.09.340(3)(a) are, in effect, specific variations of the same more general formulations set forth for denial of release plans in section 9.94A.728(2)(d). Section 72.09.340(3)(a) provides:
[T]he department shall not approve a residence location if the proposed residence: (i) Includes a minor victim or child of similar age or circumstance as a previous victim who the department determines may be put at substantial risk of harm by the offender's residence in the household; or (ii) is within close proximity of the current residence of a minor victim, unless the whereabouts of the minor victim cannot be determined or unless such a restriction would impede family reunification efforts ordered by the court or directed by the department of social and health services. The department is further authorized to reject a residence location if the proposed residence is within close proximity to schools, child care centers, playgrounds, or other grounds or facilities where children of similar age or circumstance as a previous victim are present who the department determines may be put at substantial risk of harm by the sex offender's residence at that location.
These bases for denial of a proposed residence, which take into account whether the residence includes or is near a past or potential victim, are simply more specific examples of the final two criteria that serve as legitimate bases for denial under § 9.94A.728(2)(d), whether the "proposed residence location and living arrangements ... place the offender at risk to reoffend, or present a risk to victim safety or community safety.” Wash Rev. Code § 72.09.340(3)(a).

. For this reason, courts have routinely held that the "may grant ... if" formulation does not create a liberty interest. See, e.g., Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001) (New York parole statute); Dace v. Mickelson, 797 F.2d 574, 577 (8th Cir.1986) (South Dakota parole statute); Gale v. Moore, 763 F.2d 341, 343 (8th Cir.1985) (Missouri parole statute); Parker v. Corrothers, 750 F.2d 653, 656-657 (8th Cir.1984) (Arkansas parole statute); Dock v. Latimer, 729 F.2d 1287, 1288 (10th Cir.1984) (Utah parole statute); Irving v. Thigpen, 732 F.2d 1215, 1217 (5th Cir.1984) (Mississippi parole statute); Candelaria v. Griffin, 641 F.2d 868, 869-70 (10th Cir.1981) (New Mexico parole statute); Williams v. Briscoe, 641 F.2d 274, 276-77 (5th Cir.1981) (Texas parole statute); Schuemann v. Colo. State Bd. of Adult Parole, 624 F.2d 172, 174 n. 2 (10th Cir.1980); Boothe v. Hammock, 605 F.2d 661, 664 (2d Cir.1979) (New York parole statute); Shirley v. Chestnut, 603 F.2d 805, 806-07 (10th Cir.1979) (Oklahoma parole statute); Wagner v. Gilligan, 609 F.2d 866, 867 (6th Cir.1979) (Ohio parole statute).

. The concurrence contends that we read too much into the use of the word "liberty interest” in these cases. It first argues that .the liberty interest recognized by the Washington Court of Appeals is merely procedural, rather than substantive, in nature. Cone. Op. at 672 (“In both Liptrap and Dutcher, the Washington court’s holding concerned only the inmate's procedural right to have his proposal considered on the merits, rather than a substantive right to transfer."). To the contrary, the Washington court explained; "An inmate’s interest in his earned early release credits is a limited, but protected, liberty interest. Likewise, the department's compliance with requirements of statutes affecting his release is a protected liberty interest.” See In re Liptrap, 111 P.3d at 1231 (quoting In re Dutcher, 60 P.3d at 636) (emphasis added). As this language makes clear, the Washington court recognizes a liberty interest in both the substantive right to earned early release (here, in the form of transfer to community custody) and the distinct procedural right to have the' DOC comply with the requirements of the statutes governing such release.
The concurrence next suggests that "the Washington Court of Appeals is using ‘liberty interest’ far more broadly than the term of art of federal Due Process jurisprudence ... encompassing any right cognizable at law *668 with some bearing on whether one receives liberty.” Cone. Op. at 672-73 n. 3. That the Washington court had the federal Due Process Clause — and not an ambiguous right otherwise recognized at law-in mind when analyzing section 9.94A.728(2) is, again, evidenced by the plain language of its decision in Liptrap, where the court framed its discussion of the interest at stake in the familiar terms of federal due process jurisprudence. See In re Liptrap, 111 P.3d at 1231 (explaining that " '[d]ue process protects against the deprivation of life, liberty, or property' and finding that” “[a]n inmate's interest in his earned early release credits is a limited, but protected, liberty interest”).

. The Liptrap court specifically noted section 72.09.340's provision for denial of a release plan because the proposed residence is near young children as a "legitimate statutory reason for disapproving a release plan for a sex offender.” In re Liptrap, 111 P.3d at 1233 & n. 6 (citing Wash. Rev. Code § 72.09.340(3)). For the reasons set forth in footnote 11 supra, this provision is simply a specific example of the more general bases for denial set forth in section 9.94A.728(2)(d).

. We acknowledge that our holding is inconsistent with two non-precedential dispositions of this court, as well as the unpublished decisions of several federal district courts that have addressed this question. See Dutcher v. Lehman, 234 Fed.Appx. 631, 2007 WL 1742794 (9th Cir.2007); Chaney v. Lehman, 225 Fed.Appx. 708, 2007 WL 870358 (9th Cir.2007); Duncan v. Lehman, No. C04- *669 5633RBL, 2006 WL 1548820 (W.D.Wash. June 2, 2006); Garcia v. Lehman, No. C04-5893FDB, 2006 WL 827957 (W.D.Wash. Mar.23, 2006). The district court dispositions are in no way binding and, for the reasons set forth above, we do not believe that they reach the correct result.
The contrary dispositions of our own court do give us pause, although when the panel involved deliberately chooses to make its views non-precedential we would be disregarding our duty to exercise our independent judgment if we treated those views as controlling on the court. See 9th Cir. R. 36-3. Still we examine the less formal views of our colleagues with some deference, while bearing in mind the ultimate status our colleagues have chosen to have us and all future panels afford those views. In Chaney, one of the two non-precedential dispositions filed by our colleagues, Washington inmates held beyond the date that they were or would be eligible for release into community custody appealed the denial of their release without a prior hearing. 2007 WL 870358, at *1. In affirming the district court’s dismissal of their section 1983 claim, the Chaney panel reached two alternative holdings. One, with only the cursory observation that ”[t]he Washington statute grants a significant degree of discretion to the DOC[,]” the panel found that state law did not create a liberty interest in release into community custody. Id. However, as the Supreme Court explained in Allen, "the presence of general or broad release criteria delegating significant'discretion to the deci-sionmaker .... is not incompatible with-the existence of a liberty interest.” Allen, 482 U.S. at 375-76 (emphasis added). Two, acknowledging that Washington state courts have found a limited liberty interest, the panel concluded that even assuming the existence of such an interest, the process demanded by the Chaney plaintiffs — a hearing— was not required. 2007 WL 870358, at *2. In the present case, Carver argues only that he was entitled to some form of process before his release plan was summarily rejected, not that he was entitled to a full hearing. Thus, the alternative Chaney holding is in no way inconsistent with the conclusion we reach here. In Dutcher, the second of the two non-precedential dispositions, the panel’s conclusion that Washington law does not create a liberty interest in early release into community placement was supported only by a citation to Greenholtz. Dutcher, 2007 WL 1742794, at *1. For the reasons set forth above, we believe that Greenholtz supports the existence of a liberty interest. The Dutcher panel’s failure to provide any reasoning in its disposition makes it impossible for us to address the merits of its conclusion to the contrary.